UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NEAL D. SECREASE, JR., <br> *Plaintiff*, <br><br> *vs.* <br><br> WESTERN & SOUTHERN LIFE INS. CO., ET AL., <br> *Defendants*. | 1:14-cv-00955-JMS-TAB |

## ORDER

On December 3, 2014, the Court issued an Order to Show Cause regarding Defendant Western & Southern Life Insurance Company's ("Western & Southern") allegation that Plaintiff Neal D. Secrease, Jr. submitted a fraudulent document to the Court in opposing Western & Southern's Motion to Dismiss. [Filing No. 20.] For the reasons explained below, the Court finds that Mr. Secrease submitted a fraudulent document to the Court, that his explanation of the fraudulent submission is also not credible, and that the appropriate sanction for his conduct is the dismissal of his action.[1]

**A.  Background**

Mr. Secrease, proceeding *pro se,* filed this action against his former employer Western & Southern and others alleging several violations of Title VII of the Civil Rights Act. [Filing No. 1.] Western & Southern moved to dismiss Mr. Secrease's claims as time barred. [Filing No. 11.] In its reply brief, Western & Southern alleged that Mr. Secrease submitted a fraudulent contract to the Court in responding to Western & Southern's Motion to Dismiss. The Court dismissed as

---

[1] Defendants Juanita Thomas, Steven Bibi, Keith Payne, and Todd Brubaker have not been served by Mr. Secrease, even though the 120-day window for service has passed. While they could be dismissed without prejudice for lack of service, the appropriate sanction for Mr. Secrease's conduct is the dismissal of his claim against all defendants with prejudice.

time-barred all of Mr. Secrease's claims save for one of his retaliation claims. [Filing No. 19.] The Court also issued an Order to Show Cause regarding Western & Southern's allegation that Mr. Secrease submitted a fraudulent contract. [Filing No. 20.] The Court held a hearing at which the parties were given the opportunity to present testimony and other evidence regarding Western & Southern's allegation. [Filing No. 24.] The parties also both submitted additional arguments and evidence following the hearing. [Filing No. 25; Filing No. 27; Filing No. 28; Filing No. 29; Filing No. 30.]

### B. Legal Standards

"[T]he court's inherent authority to rectify abuses to the judicial process . . . authorizes sanctions for certain violations." Dotson v. Bravo, 321 F.3d 663, 667 (7th Cir. 2003). One such power is dismissal, but "the district court's inherent authority to dismiss a case is not without limitations." Greviskes v. Universities Research Ass'n, Inc., 417 F.3d 752, 759 (7th Cir. 2005). Dismissal "should be employed sparingly and only when there is a record of delay, contumacious conduct, or when other, less drastic sanctions prove unavailing." Dotson, 321 F.3d at 667. "In deciding what measure of sanctions to impose, the district court should consider the egregiousness of the conduct in question *in relation to all aspects of the judicial process*." Id. (emphasis in original) (citation and quotation marks omitted). "Dismissal is appropriate where a party has displayed fault, bad faith, or willfulness." Greviskes, 417 F.3d at 759.

The Seventh Circuit has observed that misconduct "may exhibit such flagrant contempt for the court and its processes that to allow the offending party to continue to invoke the judicial mechanism for its own benefit would raise concerns about the integrity and credibility of the civil justice system that transcend the interests of the parties immediately before the court." Dotson, 321 F.3d at 668. Therefore, "a district court's inherent power to sanction for violations of the

judicial process is permissibly exercised not merely to remedy prejudice to a party, but also to reprimand the offender and to deter future parties from trampling upon the integrity of the court." *Salmeron v. Enterprise Recovery Sys., Inc.*, 579 F.3d 787, 797 (7th Cir. 2009) (citation and quotation marks omitted).

### C. Discussion

The Court begins its discussion by explaining the nature of the fraudulent document Mr. Secrease submitted and Mr. Secrease's explanation for doing so at the Show Cause hearing. Western & Southern filed a Motion to Dismiss Mr. Secrease's claims pursuant to Rule 12(b)(6), alleging that certain of his claims were time-barred and that the others failed to state a claim. [Filing No. 11.] Mr. Secrease filed a response brief in which he argued only that the Court should enforce the arbitration agreement that he claimed was in his employment contract with Western & Southern. [*See, e.g.*, Filing No. 14 at 1 ("I hereby move the court to deny Defendant's Motion to Dismiss with Prejudice and enforce the Arbitration agreement."); Filing No. 14 at 2 ("Plaintiff['s] claims are covered by the [Dispute Resolution] Program in the Sales Representative Agreement while the Defendant has ignored the contract agreement itself with their actions, misrepresentations and fraudulent statement made with malice upon the termination of Plaintiff['s] employment contract . . . . The plaintiff has every legal right to arbitrat[e] any and all claims in the [Dispute Resolution] Program."). Along with his response brief, Mr. Secrease filed, among other things, a document entitled "Sales Representative Agreement," which purported to be his employment contract with Western & Southern. [Filing No. 14-1.] This document is five pages, and consists of a cover page signed by Mr. Secrease and the President and Senior Vice President of Western & Southern on

October 2, 2006, three pages of typed text setting forth the provisions of the employment contract—including a Dispute Resolution Program ("DRP")—and a final signature page signed by Mr. Secrease on October 2, 2006. [Filing No. 14-1.] In its reply brief, Western & Southern alleged that this document was fraudulent. [Filing No. 15 at 3-6.]

The Court finds that Western & Southern persuasively demonstrated why the Sales Representative Agreement submitted by Mr. Secrease is indisputably fraudulent. Not only did Western & Southern introduce credible testimony by a witness with knowledge of Mr. Secrease's employment contracts with Western & Southern explaining as much, but each page of the document contains a typed "Form" number that, when examined, reveals that Mr. Secrease manufactured this document. Evidence presented at the hearing showed that the "06" and "09" digits in the form numbers indicate the year the document was created—that is, in 2006 and 2009, respectively. The pages containing Mr. Secrease's signature are numbered "Form 2-0603," while the three pages containing the terms of the contract are numbered "Form 2-0901." Simply put, the Court concludes that Mr. Secrease used the signature page from his Sales Representative Agreement (signed in 2006) and the pages containing the terms from Western & Southern's 2009 Sales Representative Agreement and organized them such that they appeared to be a single, cohesive contract governing his employment relationship with Western & Southern. The purpose of this deception was clear: Mr. Secrease made it appear that the Sales Representative Agreement he signed in 2006 included the DRP that was in the 2009 Sales Representative Agreement, and then argued that the 2009 DRP required his claim to be submitted to arbitration.

Mr. Secrease testified at the hearing and admitted to the Court that the Sales Representative Agreement he submitted was not his original contract, and that, as is obvious from the "Form" numbers, the document was created as the Court described. But instead of offering a reasonable

explanation for submitting this fraudulent document or simply admitting that his attempt to deceive the Court and Western & Southern was ill-advised, Mr. Secrease offered incredible, implausible and blame-shifting excuses for what occurred. According to Mr. Secrease, he did not intend for the Court to receive the impression that the document he submitted was his "actual Sales Agreement." [Filing No. 29 at 1.] Instead, Mr. Secrease maintains that he signed another Sales Representative Agreement in 2009 that contained the terms he submitted to the Court, but that he does not have a copy of that signed Sales Representative Agreement and Western & Southern is misrepresenting that it does not have a 2009 Sales Representative Agreement for him on file.[2] [Filing No. 29 at 1.] Therefore, to argue that his dispute should be governed by the 2009 Sales Representative Agreement, Mr. Secrease claims that he decided to submit a former coworker's Sale Representative Agreement, but he was unable to obtain her approval to do so. [Filing No. 29 at 1.] In lieu of such approval, Mr. Secrease allegedly thought he need only submit the signature page of his 2006 Sales Representative Agreement "showing that [he] did in fact sign a Sales Agreement . . . in addition to signing the latest updated version of [the] Sales Agreement/[Dispute Resolution Program]." [Filing No. 29 at 1.]

Furthermore, Mr. Secrease maintains that the "confusion over the document was the unintentional oversight and failure to put the '06 Sales agreement in a separate exhibit with that document only, but in the haste [and] confusion surrounding the last minute preparation of my submission to the Court . . . it was overlooked." [Filing No. 29 at 2.] Mr. Secrease explained at the

---

[2] According to Mr. Secrease, the only document from Western & Southern in his possession that he signed is the 2006 "face page of [his] sales agreement." [Filing No. 29 at 2.] This is incredible, to say the least, given that Mr. Secrease also submitted as the last page of his Sales Representative Agreement a signed anti-discrimination policy. [*See* Filing No. 14-1 at 5.] As to this document, Mr. Secrease asserts that he has "no recall or recollection of ever having that document in [his] possession" or "having any intention of it being party of any submission." [Filing No. 29 at 8.]

- 5 -

hearing that Cynthia Johnson—a former employee of Western & Southern who allegedly assisted Mr. Secrease in preparing his filing and provided the pages of her 2009 Sales Representative Agreement for Mr. Secrease to submit—must have accidentally arranged the exhibits he intended to file separately into a single pile, which led Mr. Secrease to inadvertently submit them as one exhibit when he filed them with the Clerk. In sum, Mr. Secrease states: "[t]here was never any intent or need to fabricate any documents nor would I believe that these documents would be submitted or represented to be <u>my</u> sale[s] agreement in entir[e]ty." [Filing No. 29 at 3 (emphasis in original).]

None of Mr. Secrease's explanations for submitting the fraudulent Sales Representative Agreement are credible, and most of them are not even plausible. The most salient feature of Mr. Secrease's testimony was that it was clear he had no intention of being candid with the Court. In the end, the Court finds that Mr. Secrease's testimony was not credible and his justifications for submitting the fraudulent document amount to nothing more than further attempts by Mr. Secrease to deceive the Court. The following examples are illustrative:

- Mr. Secrease alleges that he submitted Ms. Johnson's contract as an example of the Sales Representative Agreement he allegedly signed with Western & Southern, but he failed to mention this at all in his response brief, arguing instead that the Sales Representative Agreement attached was valid and that the Court should therefore enforce it.

- Mr. Secrease alleges that he submitted Ms. Johnson's contract as an example of the Sales Representative Agreement he allegedly signed with Western & Southern, but failed to submit Ms. Johnson's signature page. Instead, he deceptively replaced it with his own.

- Mr. Secrease alleges that he mistakenly submitted his signature page and the pages of Ms. Johnson's contract as one exhibit because Ms. Johnson stacked the exhibits incorrectly before Mr. Secrease delivered them to the Clerk for filing. But this is implausible, given that the exhibit he filed contained two pages containing Mr. Secrease's signature placed on either side of the three pages from Ms. Johnson's contract. This shows a deliberate attempt to create what would appear to be a complete

contract, not the accidental combining of stacks of papers. Moreover, it is inconceivable that Mr. Secrease would have filed his signature page and the three pages of Ms. Johnson's contract (that contained only typed text) as separate exhibits without explaining in his brief what he was attempting to show by submitting her contract as a separate exhibit. As stated above, Mr. Secrease offered no such explanation. As aptly summarized by Western & Southern, "it makes no sense that: [Mr.] Secrease only retained the first page of his 2006 Sales Representative Agreement (rather than the complete agreement); mistakenly excluded the first page of [Ms.] Johnson's agreement (rather than filing the complete agreement); and then mistakenly joined the first page of his agreement with pages two, three, and four of [Ms.] Johnson's agreement." [Filing No. 28 at 4.]

- Mr. Secrease alleges that he realized that he mistakenly submitted his signature page and the pages of Ms. Johnson's Sales Representative Agreement as one exhibit shortly after he submitted them and claims to have almost immediately attempted to contact the Court to correct the error, but this too is not credible. At the hearing, Mr. Secrease first testified that he spoke with someone in the Clerk's Office who informed him, among other things, that the call was being recorded. This is simply not the practice of the Clerk's Office, and thus not true. Moreover, Mr. Secrease's own phone records do not show that he called the Clerk's Office at any time near the date he filed his response brief.[3] Mr. Secrease then alleged that he called the undersigned's chambers, yet Mr. Secrease's phone records do not reflect such a call either. Finally, Mr. Secrease contends he discussed the mistaken filing with his lawyers—who represented Mr. Secrease for only a short period in this case—shortly thereafter, and he offers into evidence text messages and phone records to prove this fact. [Filing No. 27] But the text messages (between he and Ms. Johnson) are at best vague, and they, along with phone records, certainly do not show that he spoke with his attorneys about any particular subject. [*See* Filing No. 27-1; Filing No. 27-2; Filing No. 27-3.] Although Mr. Secrease testified that he attempted to correct his error, how he did so was a moving target: his alleged attempt to correct the error changed each time his most recent explanation was revealed to be untrue.

- In what can only be understood as an attempt to further deceive the Court into believing that Mr. Secrease's claims were governed by the DRP outlined in the pages of Ms. Johnson's Sales Representative Agreement (that she signed in 2009), Mr. Secrease submitted a copy of the 2009 DRP to the Court along with his response brief. As demonstrated by Western & Southern, the footer of the actual DRP revealed that it was created in 2009, but Mr. Secrease redacted the footer before submitting the document to the Court. This allowed Mr. Secrease to deceptively contend that the 2009 DRP governed the Sales Representative Agreement he signed in 2006.

---

[3] Mr. Secrease's wife testified that she overheard this call, but like Mr. Secrease's testimony, her testimony was not credible.

The foregoing are examples of a consistent pattern by Mr. Secrease of attempting to deceive the Court that began with the filing of a fraudulent document that was at the core of Mr. Secrease's argument against dismissal. The discovery that Mr. Secrease's document was fraudulent did not put an end to his conduct, but began a series of incredible explanations and further untruths. Because of this, the Court concludes that dismissal of Mr. Secrease's claims with prejudice is the proper sanction for his fraud and consistent inability to be honest with the Court. Although a harsh sanction, dismissal is warranted "where a party has displayed fault, bad faith, or willfulness," *Greviskes*, 417 F.3d at 759, and Mr. Secrease has displayed all three. *See also Dotson*, 321 F.3d at 667 (holding that dismissal as a sanction is warranted when a litigant engages in "contumacious conduct"). Specifically, Mr. Secrease attempted to excuse his submission of a fraudulent document by providing dishonest testimony to the Court. Such actions make Mr. Secrease's case an especially strong candidate for dismissal. *See Greviskes*, 417 F.3d at 759 (affirming the dismissal with prejudice of the plaintiff's claims, explaining: "Rather than admit her initial wrongdoing to the district court, [the plaintiff] subverted the purpose of the evidentiary hearing by engaging in further fraudulent conduct"). Finally, this sanction is warranted not only—or even primarily—to prevent Western & Southern from having to contest Mr. Secrease's continual misrepresentations to the Court, but to "reprimand [Mr. Secrease] and to deter future parties from trampling upon the integrity of the court." *Salmeron*, 579 F.3d at 797. Litigants, both represented and *pro se*, must be on notice that there are harsh sanctions for repeatedly being dishonest with the Court.

### D. Conclusion

For the reasons explained, Mr. Secrease's action against Western & Southern is **DISMISSED WITH PREJUDICE**. Final judgment shall issue accordingly.

January 21, 2015

*Jane Magnus-Stinson*
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via U.S. Mail to:**

NEAL D. SECREASE, JR.
5589 S. 350E
CUTLER, IN 46920

**Distribution via ECF to all counsel of record**